ASHLAND COAL AND COKE COMPANY *v.* OLD BEN COAL CORPORATION.

PEMBERTON COAL AND COKE COMPANY *v.* SAME.

(*April* 3, 1934.)

HARRINGTON, J., sitting.

*William S. Potter* (of Ward and Gray) and *Joseph M. Sanders* (of the West Virginia Bar) for plaintiffs.

*James R. Morford* (of Marvel, Morford, Ward and Logan) and *Walter E. Beebe* (of the Illinois Bar) for defendant.

Superior Court for New Castle County, Actions of Assumpsit, Nos. 144 and 145, September Term, 1933.

HARRINGTON, J., delivering the opinion of the Court:

The only question raised by the defendant's motion that need be considered is whether the undisputed facts clearly showed an accord and satisfaction legally binding on the plaintiffs, or whether the effect of cashing or depositing the various checks sent by the Old Ben Coal Corporation to them was properly submitted to the jury.

To constitute an accord and satisfaction, there must not only be a new agreement based on an offer, and the acceptance of that offer, as made, like any other contract, but that agreement must, also, be acted on. 3 *Elliott on Contracts,* §§ 2068, 2072; *Williston on Contracts,* §§ 1838, 1851, 1854; *Nassoiy v. Tomlinson,* 148 *N. Y.* 326, 42 *N. E.* 715, 51 *Am. St. Rep.* 695.

The checks drawn by the Old Ben Coal Corporation, payable to the order of the respective plaintiffs, and sent to them, were clearly conditional offers to fully settle disputed claims for coal sold; and these conditions could

not be waived or eliminated in any manner without the consent of that corporation. The Old Ben Coal Corporation did not reply to any of the letters written by the plaintiffs on the receipt of each check, stating that such check had merely been received on account of the amount due; and the mere fact that presumably after the receipt of the plaintiffs' letters it still continued to send checks, accompanied by vouchers, also marked in full payment, does not tend to show that the condition attached to the defendant's offer had been impliedly waived by that corporation. The evidence in these cases, therefore, presented no questions of fact, and when the plaintiffs retained and cashed the checks sent them and payable to their orders, there was clearly an accord and satisfaction and both parties were bound thereby.

By reason of that fact, neither of the plaintiffs could thereafter recover anything more on the coal shipped by them to the Lake Superior docks and sold by the Old Ben Coal Corporation. This statement is particularly applicable to the checks of May 15, 1933, purporting to cover the final balances due.

As was aptly said in *Fuller v. Kemp*, 138 *N. Y.* 231, 33 *N. E.* 1034, 1035, 20 *L. R. A.* 785, which, also, involved the effect of a check sent in full payment of a claim, the amount of which was disputed,

"The tender and the condition could not be dissevered. The one could not be taken, and the other rejected. The acceptance of the money involved the acceptance of the condition, and the law will not permit any other inference to be drawn from the transaction. Under such circumstances the assent of the creditor to the terms proposed by the debtor will be implied, and no words of protest can affect the legal quality of his act."

In *Swindell v. Youngstown Sheet & Tube Co.* (*C. C. A.*), 230 *F.* 438, 443, in discussing a similar question, the court said:

"It was open to appellants to reject this offer, but they could not both accept and reject. The language of the check and that of the voucher plainly disclosed a conditional proposal to make a full and final settlement; and this could not be frustrated simply by presenting a new and enlarged account, with a credit thereon of the amount of the check. The retention of the money was an acceptance of the condition upon which it was tendered. The transaction thus comprised the essential and familiar elements of an accord and satisfaction."

In *Ostrander v. Scott,* 161 *Ill.* 339, 43 *N. E.* 1089, 1090, where a check had clearly been sent in full payment of a disputed claim, but the question as to whether it had been accepted as such was left to the jury, the Supreme Court in reversing the lower court, among other things, said:

"The check was made, on its face, a payment in full of all demands to date; and the effect, when it was received, indorsed and collected, was the same as if it had been tendered, accompanied by a receipt to be signed in full of all demands to date, and the plaintiff had received the check and signed the receipt. * * * The only explanation offered by plaintiff was the statement in his letter that he did not accept the check in full payment of his account. He could not have failed to understand that it was offered as payment in full, and it was not his privilege to make a new contract for the defendant by writing to him that he had taken the amount and applied it as a part payment, or by his subsequent statement that the fact that defendant wished the payment to be in full did not make it so. The consent of both parties is requisite to an agreement, and the instructions were wrong in assuming that plaintiff might take the check, and substitute a new agreement or condition without the assent of the defendant. It was the right of the plaintiff to accept the check upon the terms proposed, or to reject it; but there could be no modification of the terms by his will alone, without the concurrence of the defendant."

See, also, *Nassoiy v. Tomlinson,* 148 *N. Y.* 326, 42 *N. E.* 715, 51 *Am. St. Rep.* 695; *Swindell v. Youngstown, etc., Co., (C. C. A.),* 230 *F.* 438; *Gulfport, etc., Lumber Co. v. Boeckler Lumber Co. (Mo. App.),* 287 *S. W.* 799; *Lestienne v. Ernst,* 5 *App. Div.* 373, 39 *N. Y. S.* 199; *Williston on Contracts,* § § 125, 1854, 1855; 34 *A. L. R.* 1044; 14 *L. R. A. (N. S.)* 443, *note; Restatement of the Law of Contracts, Vol.* 2, §§ 420, 421.

Though it seems that unreported cases in this State

can be cited where the old court, but perhaps without much discussion, applied a different rule, the same general principle would, also, apply if a check sent to settle a disputed claim be marked in full payment, but that memorandum be erased by the payee before cashing it. *Hull v. Johnson*, 22 *R. I.* 66, 46 *A.* 182; *Williston on Contracts*, § 1855, *note.*

Some courts have held that though the payee cashes a check, clearly sent in full payment of an unliquidated or disputed claim, if on the receipt of it he writes the maker that he is merely crediting it on account, the effect of his action is a jury question, but these cases do not represent the majority rule and are difficult to explain on principle. *Williston on Contracts*, § 1854.

In England the intent of the payee in receiving and cashing such a check was held to be a jury question in *Day v McLea*, 22 *Q. B. D.* 610, but that case was practically overruled by *Hirachand-Punamchand et al. v. Temple*, [1911] 2 *K. B.* 331; see *Williston on Contracts*, § 1854.

In fact, whatever the real intent of the payee, as shown by his letters, may be, when there are no other facts tending to show that the condition imposed by the maker of the check, whether by memorandum written on it, by an accompanying letter, or otherwise, has been waived by him, if such check is retained and cashed by the payee, any other conclusion, than that it is an acceptance of such condition, would make the payee guilty of a conversion, and courts will not draw any such inference when any other conclusion is possible. *Williston on Contracts*, §§ 1855, 1856.

At the trial, the attorneys for the plaintiffs, practically, conceded the correctness of these general principles, but claimed that they did not apply where a series of checks, all of which were marked in full payment, had been sent and cashed, as in this case.

Under those circumstances, they claim that, certainly as to any checks sent or cashed after the maker knew that the payee did not intend to receive them in full payment, the effect of cashing them was for the jury to determine, and it was on this theory that the issue in this case was submitted to the jury.

The action of the court in this respect was almost entirely based on *Laroe v. Sugar Loaf Dairy Co.,* 180 *N. Y.* 367, 73 *N. E.* 61, but on more mature consideration, as I have already intimated, I can see no difference in principle between the effect of a disputed claim on the cashing of one check by the payee, undeniably marked and sent by the maker in full payment, and the effect of cashing a series of monthly or other checks, sent to the payee and marked by the maker in the same manner. *Laroe v. Sugar Loaf Dairy Co., supra,* expressly approved both *Fuller v. Kemp,* 138 *N. Y.* 231, 33 *N. E.* 1034, 20 *L. R. A.* 785, and *Nassoiy v. Tomlinson,* 148 *N. Y.* 326, 42 *N. E.* 715, 51 *Am. St. Rep.* 695, *supra,* and, if correctly decided, involved very different facts from the facts in this case.

In that case, the plaintiffs made a contract with an officer of the defendant company whereby they were to deliver milk to that company at a price to be determined by the New York market. The authority of that officer to make any such contract was subsequently denied by the defendant, and the president of that company told the plaintiffs that if they continued to deliver milk it must be at the same price paid them the previous year, but the plaintiffs then notified the defendant that they stood squarely on their contract with that company, and that if they were paid less than the agreed price they would merely credit that amount and hold the defendant for balance due. The plaintiffs continued to deliver milk during the contract period, and at the end of each month the defendant com-

pany sent them a check, calculated at the price of the previous year; all of these checks were cashed, though they were clearly sent in full payment, but under the peculiar facts the effect of cashing them was held to be a jury question.

Perhaps, we might, also, add that the contentions of the plaintiffs in this case, based on *Laroe v. Sugar Loaf Dairy Co., supra,* are inconsistent with *Samuels v. E. F. Drew & Co. (D. C.),* 7 *F.* (2d) 764, and apparently, with the charge to the jury in the unreported case of *Gearheart v. Butz Lumber Co.,* tried in the Superior Court for New Castle County at the March Term, 1925.

On the authority of *Whittaker Chain Tread Co. v. Standard Auto Supply Co.,* 216 *Mass.* 204, 103 *N. E.* 695, 51 *L. R. A.* (*N. S.*) 315, *Ann. Cas.* 1915 *A.* 949, and similar cases (see cases cited in *Williston on Contracts,* § 129) the plaintiffs point out, however, that the checks cashed by them were merely for the amounts which the defendant company admitted were due them under their contracts relating to the coal shipped to the Lake Superior docks, and claimed that there was, therefore, no consideration to support the contract relied on by that company, in defense of the plaintiffs' claims.

As was aptly pointed out in *Williston on Contracts,* § 129,

"Not infrequently though a claim is unliquidated or the subject of a *bona fide* and reasonable dispute, it is conceded that, at least, a certain amount is due. It might seem that in paying this conceded part of the claim, or any lesser amount, the debtor was merely doing what he was previously bound to do, and that, therefore, the payment could not be valid consideration. The law, however, looks at an unliquidated or disputed claim as a whole, and so looking at it does not attempt to set a value upon it, or to define the extent of the debtor's legal obligation."

The author then adds "and the payment of the

amount admittedly due will support a promise to discharge the whole claim." See, also, *Nassoiy v. Tomlinson,* 148 *N. Y.* 326, 42 *N. E.* 715, 51 *Am. St. Rep.* 695; *Ostrander v. Scott,* 161 *Ill.* 339, 43 *N. E.* 1089; *Chicago, M. & St. P. R. Co. v. Clark,* 178 *U. S.* 353, 20 *S. Ct.* 924, 44 *L. Ed.* 1099.

There was, therefore, sufficient consideration to support the contract relied on by the defendant company and the motion of the defendant for a new trial in each case must be granted.