OPINION OF THE COURT
Ethel B. Danzig, J.
The issue to be determined by this court on defendant’s motion for summary judgment is whether plaintiff Aguiar’s acceptance of a check from defendant Harper & Row Publishers, Inc., and negotiation of it after placing on the back the words “Cashed under protest * * * does not represent full amount claimed”, operated as an accord and satisfaction barring plaintiff from bringing this action, or whether plaintiff thereby reserved his rights to pursue his claim pursuant to section 1-207 of the Uniform Commercial Code.
FACTS
The plaintiff, Walter Aguiar, is a photographer specializing in photographs of South America. This lawsuit arises out of a claim by Mr. Aguiar for permission fees allegedly owed to him by the defendant for the unauthorized extended use of his photographs in The Human Expression, a book published by J.B. Lippincott Company (hereinafter JBL) which is now a subsidiary of defendant Harper & Row. Prior to the publication of the book, JBL requested, by use of a standard purchase order form, permission from plaintiff to reproduce 10, and later an additional five, of his *829 photographs in a textbook for senior high school students in the subject areas of world history and world cultures. At the beginning of each invoice which he sent in response to the purchase orders, Mr. Aguiar wrote that he was granting reproduction rights to the specified color transparencies “Solely for one-time, nonexclusive, U.S., English language, hard cover, single edition rights”..
On or about November of 1980, plaintiff discovered that some copies of the book[1] had been shipped to Canada for sale there. By letter dated November 28, 1980, plaintiff demanded that defendant make an additional payment to him of $3,513.13 for the “English language, world distribution rights” to the 15 color transparencies reproduced in The Human Expression.[2]
On December 12, 1980, Robert Spence, vice-president and publisher of Harper & Row’s school department, responded to Mr. Aguiar’s letter, admitting that 72 copies of the book had been sold in Canada and that Mr. Aguiar had apparently billed JBL only for one-time, U. S. English language rights. Mr. Spence went on to say that since the sales of the book in Canada represented only two tenths of 1% of the sales in the United States, he believed that Mr. Aguiar had already been adequately compensated. Nonetheless, he enclosed a check for $441.88, which was 25% of the amount originally paid to plaintiff, “as an act of good will” and indicated this was to be “in full satisfaction of (his) claim for past and future sales” of the book. Mr. Aguiar returned the check stating that it was unacceptable, and claiming that he was entitled to twice his basic fee since the book now came within the “World Distribution Rights” fee bracket.
A response was sent to Mr. Aguiar on December 23,1980 by Edward H. Miller, vice-president and general counsel of Harper & Row, who stated that after reviewing the case, he *830 agreed with Mr. Spence’s assessment and was, therefore, again enclosing the check previously proffered and refused. This time plaintiff signed the check and negotiated it, but with the following indorsement — partially written and partially typed — on the back: “Cashed under protest. The figures [sic] on this check does not represent full amount claimed and it is not of my full satisfaction. It is only on account of my claim toward Canadian distribution rights of my photographs published in the book The Human Expression. Cashed under protest.” Plaintiff then commenced this action for $3,237.77 by summons and indorsed complaint dated March 10, 1981.
DISCUSSION
The term “accord and satisfaction” has been defined as follows: “ ‘An agreement whereby one party undertakes to give or perform, and the other to accept in settlement of an existing or matured claim, something other than that which he believes himself entitled to, is an accord, and the execution of such an agreement is a satisfaction. An accord, when followed by a satisfaction, is a bar to the assertion of the original claim’ * * * (1 NY Jur, Accord and Satisfaction, § 1; Reilly v Barrett, 220 NY 170; Ostrander v Ostrander, 199 App Div 437). In order for the compromise to be binding, it is necessary that the amount in dispute be unliquidated "or, if liquidated, that there be genuine disagreement as to the amount due.” (Braun v C.E.P.C. Distrs., 77 AD2d 358, 360.)
Despite plaintiff’s suggestion that the amount in this case is liquidated because it is based on American Society of Magazine Publishers (hereinafter ASMP) rates for onetime world distribution rights and is in accordance with industry standards, this court does not have before it sufficient information to determine exactly what ASMP rates are, and what, if any, applicability they have to the fees allegedly owed plaintiff in this case. Consequently, for purposes of this decision, the court finds that there is “genuine disagreement as to the amount due”, and that defendant therefore had a right to impose conditions in connection with the payment made. (See Hudson v Yonkers Fruit Co., 258 NY 168.) Harper & Row’s letters to Mr. Aguiar clearly indicated that his acceptance of the check *831 would constitute full satisfaction of his claim. Under the common-law theory of accord and satisfaction, the plaintiff could not accept the payment and reject the conditions on which it was made. (Hudson v Yonkers Fruit Co., supra; Nassoiy v Tomlinson, 148 NY2d 326; Carlton Credit Corp. v Atlantic Refining Co., 12 AD2d 613, affd 10 NY2d 723.)
“ ‘Under such circumstances the assent of the creditor to the terms proposed by the debtor will be implied, and no words of protest can affect the legal quality of his act’. (Fuller v Kemp, 138 NY 231, 237).” (Hirsch v Berger Import & Mfg. Corp., 67 AD2d 30, 34, mot to dismiss app granted 47 NY2d 1008.)
Plaintiff, however, claims that section 1-207 of the Uniform Commercial Code is applicable to this case and prevents the result mandated by the common-law theory of accord and satisfaction. Section 1-207 of the Uniform Commercial Code provides that “A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as ‘without prejudice’, ‘under protest’ or the like are sufficient. L. 1962, c. 553, eff. September 27, 1964.” The New York Annotations to the Official Comment to section 1-207 state that: “This section permits a party involved in a Code-covered transaction to accept whatever he can get by way of payment, performance, etc., without losing his rights to demand the remainder of the goods, to set-off a failure of quality, or to sue for the balance of the payment, so long as he explicitly reserves his rights * * * The Code rule would permit, in Code-covered transactions, the acceptance of a part performance or payment tendered in full settlement without requiring the acceptor to gamble with his legal right to demand the balance of the performance or payment.” (New York Anns, to Official Comment, McKinney’s Cons Laws of NY, Book 621/2, Uniform Commercial Code, § 1-207, p 65.)
It is the defendant’s position, however, that the transaction involved in this case is not a “Code-covered transaction”, and that the common law of accord and satisfaction, therefore, still controls. In support of its position, defendant cites the case of Blottner, Derrico, Weiss & Hoffman v *832 Fier (101 Misc 2d 371), in which the Uniform Commercial Code was held inapplicable. The Blottner case dealt with a claim for legal services, and the court there held that the Uniform Commercial Code was not applicable to the rendition of services. Harper & Row argues in this case that plaintiff was rendering services to them and thus the provisions of the Uniform Commercial Code do not apply. This court, however, finds that Mr. Aguiar’s “sale” to Harper & Row of the rights to the reproduction of his photographs is more analogous to a “transaction in goods”, which is within the “area of activity” to which the Uniform Commercial Code applies, than it is to a “rendition of services” — such as legal services — to which the Uniform Commercial Code has been held inapplicable. As was stated recently by the Appellate Division, Fourth Department: “We are required liberally to construe and apply the provisions of the Uniform Commercial Code to promote its underlying purposes and policies (Uniform Commercial Code, § 1-102).” (Continental Information Systems Corp. v Mutual Life Ins. Co. of N. Y., 77 AD2d 316, 320.)
Those purposes and policies are set forth in the New York Annotations to the Official Comment to section 1-207, supra, and in New York Jurisprudence (vol 62, Uniform Commercial Code, § 12): “The policy of modernizing the law and furthering the development of commerce will be needlessly constricted, it has been said, if courts continue to retain outmoded common-law rules in areas not covered by the Code, and refuse to give the Code the recognition it deserves. The Uniform Commercial Code — because of the unique sophistication and thoroughness of the drafting process, the representation of all interested parties, and the existence of a vast number of similar situations not expressly within its coverage — is an example par excellence of a statute that is appropriate for use as a premise for reasoning”. In addition, it has been held that a “transaction” clearly encompasses “a far wider area of activity than a ‘sale’, and it cannot be assumed that the word was carelessly chosen * * * That the provisions of the UCC may be extended by analogy to cases within the intent of the code has been foreseen by the Bar (see 5 Am. Bus. L.J. 287 [Winter, 1967]; ‘UCLA L. Rev. 13:125’ [Nov., *833 1965]; 23 Business Lawyer, [A.B.A.] 812 [April, 1968]).” (Hertz Commercial Leasing Corp. v Transportation Credit Clearing House, 59 Misc 2d 226, 230, revd on other grounds 64 Misc 2d 910.)
It is this court’s determination that the facts in this case constitute the type of commercial transaction contemplated by the men and women who drafted the Uniform Commercial Code provisions, and that it is certainly one of those “vast number of similar situations” to which the reasoning of the code should be applied.
The court in the Blottner case, where the Uniform Commercial Code was ultimately found to be inapplicable, recognized this and stated that the statute might give guidance to a court in a situation where its application was not clear (cf. Ayer v Sky Club, 70 AD2d 863, app dsmd 48 NY2d 705). The court went on to suggest that only in an area where the Uniform Commercial Code clearly did not apply would a court be estopped from using its provisions to overturn long-established common-law rules. This court finds that the business conducted between Mr. Aguiar and Harper & Bow was not one of those situations to which the Uniform Commercial Code clearly does not apply, and, therefore, this court must deny defendant’s motion for summary, judgment. As was stated in the case of Lange-Finn Constr. Co. v Albany Steel & Iron Supply Co. (94 Misc 2d 15, 18): “It is the court’s view that the common-law rule has been changed by section 1-207 of the Uniform Commercial Code. When a party indorses a final payment check ‘without prejudice and under protest’ he reserves the right to demand the balance alleged to be due, and the negotiation of the check does not effect an accord and satisfaction”. The statements written by plaintiff on the back of the check before he cashed it, including the words “Cashed under Protest” in two separate places, constituted an explicit and unambiguous reservation of his rights to demand from defendant the balance he alleges is due. (Kroulee Corp. v Klein & Co., 103 Misc 2d 441; Lange-Finn Constr. Co., supra.)
Accordingly, defendant’s motion for summary judgment is denied.

. Harper & Row, in its affidavit, suggests that it was only about 78 copies out of 111,500 copies printed altogether which were sent to Canada.

. In this letter, Mr. Aguiar stated that the two purchase orders he had received from JBL initially had the wording “One-time North-American rights”, and that he had specifically notified a Lorraine Zawodny to express his disapproval. He then clearly indicated on both invoices that the rights he was granting defendant were solely for U.S. distribution.