■ HORN WATERPROOFING CORP., Respondent, v BUSHWICK IRON & STEEL CO., INC., Appellant. — In an action to recover moneys allegedly due and owing from defendant for labor, services and materials furnished by plaintiff, defendant appeals (by permission) from an order of the Appellate Term of the Supreme Court for the Second and Eleventh Judicial Districts, dated March 17, 1983, which affirmed an order of the Civil Court, Queens County (Marmarellis, J.), dated April 8, 1982, which denied defendant's motion to dismiss the complaint.

Order dated March 17, 1983 reversed, on the law, with costs, order dated April 8, 1982 vacated, motion granted, and complaint dismissed.

In or about March, 1981, the parties entered into an oral agreement whereby plaintiff was to perform certain repair work to correct leaks in the roof of defendant's building. According to plaintiff, it was agreed that the work was to be performed on a time and material basis, with the further understanding that a patching job might not be adequate and that a new roof might be required. After working on the roof for two days, plaintiff determined that in order to eliminate the leaks, replacement of the entire roof was necessary. Based upon the repair work performed over those two days, plaintiff submitted an invoice to defendant in the sum of $1,241.92. Defendant disputed the value of the work done and, in an apparent attempt at compromise, plaintiff submitted a second invoice reducing the sum to $1,080. Defendant rejected this second invoice as well and tendered to plaintiff a check in the sum of $500, which was marked, "This check is accepted in full payment, settlement, satisfaction, release and discharge of any and all claims and/or demands of whatsoever kind and nature". Plaintiff, before negotiating the check, added the indorsement "Under Protest".

Thereafter, plaintiff commenced this action seeking to recover the balance due of $580. Prior to joinder of issue, defendant moved to dismiss the complaint, claiming that the documentary evidence in the case established the defense of accord and satisfaction. The Civil Court denied the motion to dismiss and its order was affirmed by the Appellate Term. We now reverse.

The issue here is whether the agreement between the parties is a contract for the sale of goods governed by the Uniform Commercial Code, such that plaintiff's negotiation of the check "Under Protest" avoided an accord and satisfaction of the claim (Uniform Commercial Code, § 1-207). We hold that the parties' agreement was not a contract for the sale of goods. Under the common law, the acceptance and negotiation of a check tendered in full payment and satisfaction of a disputed claim would, as a matter of law, constitute an accord and satisfaction of that claim (*Manfredi Constr. Corp. v Green Fan Co.,* 87 AD2d 611). For claims arising out of a contract for the sale of goods, however, section 1-207 of the Uniform Commercial Code provides that, "A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice', 'under protest' or the like are sufficient". Thus, it is clear that, if the agreement at bar is governed by the Uniform Commercial Code, plaintiff's indorsement of the check under protest was sufficient to preserve its rights to recover the remainder of the sum claimed to be due and owing.

Defendant argues that the agreement, rather than being one for the sale of goods, is one for the rendition of work, labor and services to which the common-law rule applies. The decisions in this State have distinguished between the two types of contracts by examining whether the element of the transfer of goods or personal property predominates over the element of work, labor and services (see *Milau Assoc. v North Ave. Dev. Corp.,* 42 NY2d 482; *Perlmutter v Beth David Hosp.,* 308 NY 100). In *Milau* (*supra*), for example the court held that a standard form construction subcontract calling for the installation of a sprinkler system was primarily a contract for work, labor and services and not for the sale of goods. Similarly, in *Schenectady Steel Co. v Trimpoli Gen. Constr. Co.* (43 AD2d 234, affd 34 NY2d 939), it was held that a contract to erect structural steel for a bridge was one in which the sale of the steel beams was merely incidental to the predominant purpose of the contract, namely the erection of the steel beams. A recent case in this court, *Geelan Mechanical Corp. v Dember Constr. Corp.* (97 AD2d 810), involved a similar situation to the one at bar. The plaintiff entered into a standard construction subcontract to perform plumbing work for defendant, a general contractor. During the course of the work, a dispute arose between the parties as to the amount due for work and extras on the contract. Defendant sent plaintiff a check upon which was denoted, "Accepted in Full & Final Payment on all Contract extras — C.O.'s etc.". Plaintiff, before negotiating

the check, added the following notation: "Subject to any claims by Geelan Mechanical Corp. against Dember Construction Corp.". Plaintiff then brought an action to recover additional moneys. In affirming the dismissal of the complaint on the ground that plaintiff's acceptance of the check in full satisfaction of the claim constituted an accord and satisfaction, this court held that "[u]nder New York law it is therefore almost beyond dispute that this contract — in which barely any mention is made of "goods" to be "sold", while there is exhaustive attention paid to the work to be performed — is not covered by the Uniform Commercial Code" (*Geelan Mechanical Corp. v Dember Constr. Corp., supra,* p 811).

In the case at bar, it is equally clear that what was contracted for was plaintiff's work, labor and services in patching defendant's roof. The parties made no reference to any particular goods which were to be sold to defendant in the performance of that task. Thus, it seems clear that the parties' agreement is not governed by the Uniform Commercial Code. Rather, it is governed by the common-law rule of accord and satisfaction, which requires dismissal of plaintiff's claim. To the extent that the holding of the Appellate Division, First Department, in *Ayer v Sky Club* (70 AD2d 863, app dsmd 48 NY2d 705) is to the contrary, we decline to follow it. While the result which we reach may pose a dilemma for a contracting party who receives a check denoted to be in full satisfaction of a disputed claim, it can be readily prevented by the parties inserting specific language in the contract adopting the Uniform Commercial Code rule, if that be their wish. Lazer, J.P., Thompson and Brown, JJ., concur.

Weinstein, J., dissents and votes to affirm the order appealed from with the following memorandum: Notwithstanding the sound legal reasoning expressed by my learned colleagues of the majority, I vote to affirm the order of the Appellate Term affirming the order denying defendant's motion to dismiss the complaint. I cannot condone the gross inequity which would inure to creditors in plaintiff's position as a consequence of the majority's holding.

It has been stated that "[o]ffering a check for less than the contract amount, but 'in full settlement' inflicts an exquisite form of commercial torture on the payee" (White and Summers, Uniform Commercial Code [2d ed], § 13-21, p 544). To ameliorate such a "commercial torture", there exists a movement strongly urging that the provisions of section 1-207 of the Uniform Commercial Code should be deemed applicable to non-code

transactions as well as to matters specifically within the province of the code. "The policy of modernizing the law and furthering the development of commerce will be needlessly constricted, it has been said, if courts continue to retain outmoded common-law rules in areas not covered by the Code, and refuse to give the Code the recognition it deserves" (62 NY Jur, Uniform Commercial Code, § 12, p 160). Particularly illustrative is the following discussion excerpted from a treatise on the common-law notion of accord and satisfaction:

"Assuming that section 1-207 applies only to transactions under one of the substantive articles of the Code, would the settlement of an obligation arising out of the sale of goods bring the transaction within article two?

" 'Unless the context otherwise requires [article two] applies to transactions in goods * * *.' Is the compromise of a claim for payment for goods a 'transaction in goods'? A number of provisions of article two go beyond a narrow definition of 'transaction in goods' and relate specifically to the later stages in the life of the contract rather than to the sale itself. Sections 2-106(3) and (4) define 'termination' and 'cancellation' when used elsewhere in the article. Section 2-209 relates, *inter alia,* to modifications without consideration, the requirement of a signed writing for modification or rescission, and the effect of an attempted modification or rescission as a waiver. Termination, evidentiary matters, and a statute of limitations are also dealt with in sections 2-309(3), 2-723, 2-724, and 2-725. If these matters are within article two, an accord and satisfaction of a claim arising out of a contract of sale of goods would also seem to be included. Perhaps they can be dismissed as examples of sections where 'the context otherwise requires', but it seems more reasonable to regard article two as applying to all aspects of goods contracts from beginning to end. A similar analysis should govern the applicability of section 1-207 to accords and satisfactions arising out of the subject matter of the other substantive articles of the Code (e.g., letters of credit under article five or investment securities under article eight).

"Article three ('Commercial Code'), however, is a special case. Does the fact that a check is used as the device to effect a settlement in itself bring the transaction within the Code (and therefore make section 1-207 arguably applicable) even if the underlying transaction was one not otherwise covered by the Code? Article three contains no scope provision analogous to the 'transactions in goods' language in section 2-102. The disclaimer of applicability to 'money, documents of title or investment securities' in section 3-103(1) does not define what article three

does apply to. In most respects, article three relates to rights to and under negotiable instruments themselves, rather than to the collateral consequences of the giving or taking of them. A strong argument could thus be made that issues pertaining to the effect of a check on an underlying obligation were not germane to that article at all — were it not for section 3-802. But section 3-802(1) is quite specific in its treatment of the consequences upon an underlying obligation of the taking of a negotiable instrument in payment of it. Moreover, as discussed above, there was at one time a subsection (3) to section 3-802 which dealt specifically with the precise issue of the effect of the full-payment check.

"Thus it seems fairly clear that if such a check is tendered in settlement, the transaction must be regarded as being within article three, and if section 1-207 is otherwise relevant its application cannot be avoided by showing either that article one was not meant to be applied to non-Code transactions or that the underlying obligation did not arise out of one of the other substantive articles of the Code" (Rosenthal, Discord & Dissatisfaction: § 1-207 of the Uniform Commercial Code, 78 Col L Rev 48, 69-70).

In this State, there exists conflicting authority on the question of whether section 1-207 of the Uniform Commercial Code is applicable to commercial transactions other than the garden variety sale of goods contract. In *Ayer v Sky Club* (70 AD2d 863, app dsmd 48 NY2d 705), the Appellate Division, First Department, held that the section applied in a situation involving a bill for a party given by the plaintiff on the defendant's premises. In concluding that there was no accord and satisfaction because the defendant reserved its right in a letter stating that it was accepting the check proffered by the plaintiff only in partial satisfaction of the existing debt, the court noted as follows: "We perceive the transaction underlying the billing dispute between the parties to be one in which, while occurring in an area to which the statute (Uniform Commercial Code) might not expressly apply, nevertheless, the rule of the statute should be applied" (*Ayer v Sky Club, supra,* p 864; see, also, *Cohen v Ricci,* 120 Misc 2d 712, 713-716; *Aguiar v Harper & Row Publishers,* 114 Misc 2d 828, 831-833; *Lange-Finn Constr. Co. v Albany Steel & Iron Supply Co.,* 94 Misc 2d 15, 18). To the contrary is this court's holding in *Geelan Mechanical Corp. v Dember Constr. Corp.* (97 AD2d 810), where *Ayer v Sky Club (supra)* was unequivocally rejected and a standard form construction contract was found not covered by the Uniform Commercial Code so that a common-law accord and satisfaction resulted (see, also,

*Channave v Kraai,* 120 Misc 2d 859, 860; *Blottner, Derrico, Weiss & Hoffman v Fier,* 101 Misc 2d 371, 373-374). This court's holding in *Geelan* was predicated upon the long-standing tenet that the Uniform Commercial Code is not applicable in situations where service predominates and transfer of title to personal property is merely incidental to the over-all transaction (see *Milau Assoc. v North Ave. Dev. Corp.,* 42 NY2d 482; *Schenectady Steel Co. v Trimpoli Gen. Constr. Co.,* 43 AD2d 234, affd 34 NY2d 939).

A tendency to find section 1-207 of the Uniform Commercial Code applicable to a situation like that presented here is evident in several other jurisdictions (see *Kilander v Blickle Co.,* 280 Ore 425, 429; *Scholl v Tallman,* 247 NW2d 490, 492 [SD]; *Baillie Lbr. Co. v Kincaid Carolina Corp.,* 4 NC App 342, 167 SE2d 85, 92-93). In *Baillie Lbr. Co. v Kincaid Carolina Corp. (supra),* although the contract sued upon was in fact one for the sale of goods, the Court of Appeals of North Carolina nevertheless emphasized that a liberal construction must be afforded the Uniform Commercial Code. In *Scholl v Tallman (supra,* p 491), the payee of a check for less than the balance allegedly due on a construction contract reserved his rights as to the balance due on the contract by writing the following notation above his indorsement: "Restriction of payment in full refused. $1,826.65 remains due and payable". On this basis, the Supreme Court of South Dakota concluded that there was no common-law accord and satisfaction.

In *Jahn v Burns* (593 P2d 828, 831-832 [Wyo]) the Supreme Court of Wyoming held that the use of a negotiable instrument in connection with a noncommercial transaction (there, the satisfaction of a tort claim emanating from an automobile accident) does not *ipso facto* convert that transaction into a commercial transaction subject to other provisions of the Uniform Commercial Code. This holding is in no way contradictory to my views on the applicability of section 1-207 of the Uniform Commercial Code to the case at bar. To find in favor of applicability in the instant case would not extend the scope of section 1-207 of the Uniform Commercial Code beyond reasonable parameters as a contrary holding in *Jahn v Burns (supra)* would clearly have done.

Insofar as the Uniform Commercial Code was meant to be liberally construed and applied to promote its underlying purposes and policies (Uniform Commercial Code, § 1-102, subd [1]), one of which is to " 'de-technicalize' " important branches of commercial law (White and Summers, Uniform Commercial Code [2d ed], § 4, p 16), it was obviously not meant to be

construed as a static code or one which denies pragmatic and practical uses. Accordingly, I would find section 1-207 of the Uniform Commercial Code applicable under the instant circumstances, where plaintiff explicitly reserved its rights and thereby avoided an accord and satisfaction. To the extent that *Geelan Mechanical Corp. v Dember Constr. Corp.* (97 AD2d 810, *supra*), is at variance with the conclusion I have reached here, I respectfully take issue with that holding. In view of the conflicting appellate authority regarding the applicability of section 1-207 of the Uniform Commercial Code to such situations (see *Ayer v Sky Club,* 70 AD2d 863, app dsmd 48 NY2d 705, *supra*) and *Geelan Mechanical Corp. v Dember Constr. Corp. (supra)*, the issue would appear to warrant clarification by the Court of Appeals.