Frank E. ACIERNO and F.A. Holdings, Inc., a Delaware corporation, Defendants and Counterclaimants Below–Appellants,

v.

WORTHY BROTHERS PIPELINE CORPORATION, a Delaware corporation, Plaintiff and Third Party Counterclaim Plaintiff Below–Appellee and Cross–Appellee,

v.

TRINITY PAVING COMPANY, a Pennsylvania corporation, Third Party Counterclaim Defendant Below and Cross–Appellant.

No. 009, 1994.

Supreme Court of Delaware.

Submitted: Dec. 6, 1994.
Decided: March 8, 1995.
Revised: April 17, 1995.
Rehearing Denied April 17, 1995.

Gary A. Bryde, Bayard, Handelman & Murdoch, Hockessin, and Hugh J. Bracken (argued), and J. Yannacone, Media, PA, for appellants.

Joseph Grey (argued), and Norman L. Pernick, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for appellee.

Kevin Gross, Rosenthal, Monhait, Gross & Goddess, Wilmington, and Norman E. Greenspan (argued), and Francois A. Dutchie, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for cross-appellant.

Before VEASEY, C.J., HARTNETT and BERGER, JJ.

HARTNETT, Justice.

In this appeal, we hold that the Delaware common law doctrine of accord and satisfaction has not been displaced by the adoption in Delaware of § 1–207 of the Uniform Commercial Code (UCC).

## I.

We review the Superior Court's decision, after trial, that Appellee, Worthy Brothers Pipeline Corporation ("Worthy") was entitled to a judgment against Appellant F.A. Holdings, Inc. ("Holdings"), notwithstanding that Worthy negotiated a check from Holdings that purported to be payment in full for all claims of Worthy against Holdings.

We hold that the Superior Court erred in holding that the Delaware common law doctrine of accord and satisfaction has been abrogated by Delaware's adoption of § 1–207 of the Uniform Commercial Code that provides for continued performance of a disputed contractual agreement under reservation of rights. 6 Del.C. § 1–207 (UCC). We further find that it is unclear whether all of the elements of a common law accord and satisfaction were present when the check was tendered, and it is therefore unclear whether Worthy's claim against Holdings is barred. We also find that it is unclear whether Cross Appellant Trinity Paving Company ("Trinity"), a subcontractor of Worthy, is entitled to a judgment against Worthy that need not be paid until Worthy receives payment from Holdings. We further find that Trinity is entitled to interest at 12 percent per annum as to any amount it recovers. We therefore AFFIRM IN PART AND REVERSE AND REMAND IN PART for further proceedings.

## II.

Our statement of facts is drawn, essentially, from the opinion of the Superior Court after a bench trial. *Worthy Brothers Pipeline Corp. v. Frank Acierno v. Worthy Brothers Pipeline Corp. v. Trinity Paving Co.*, Del.Super., C.A. No. 90L–10–2, 1993 WL 485900 (Sept. 22, 1993).

On January 24, 1990, Worthy entered into a contract with Holdings whereby Worthy

agreed to provide construction services at a site known as Concord Gallery, that was owned by Appellant Frank E. Acierno ("Acierno"), who is also President of Holdings. The contract provided that Worthy would demolish a school building on the site, strip the topsoil for on-site stockpiling, install a storm sewer, fine-grade the building area, install a drainage course in the area, pave and stripe the parking lot, and provide other services. Worthy subcontracted with Trinity for the paving work.

Worthy had to fine-grade the lot before Trinity could proceed with the application of 6 inches of stone, 2 inches of hot mix and then 2 inches of finish hot mix pavement. On August 31, 1990, Acierno arrived at the site while Trinity was applying the 2 inches of hot mix over the stone. Although concerned that the subsoil and water runoff were inadequate, Acierno allowed Trinity to continue placing some of the hot mix, but then prevented Trinity from completing the work.

For several weeks prior to August 31, 1990, Holdings had failed to pay the monthly bills that were submitted by Worthy and in September 1990, letters were exchanged between Worthy and Holdings. Holdings stated that the work was not progressing sufficiently and that it would terminate the contract unless work resumed within seven days. No complaint was expressed as to the work being done improperly. Worthy, on the other hand, cited Holdings' failure to pay its bills and stated that if payment was not received within seven days Worthy would stop work until payment was received. When Holdings continued to withhold payment, Worthy stopped work on the job and asked its subcontractor Trinity to do the same. Trinity thereupon refused to return to the site, despite Acierno's request to Trinity that it do the finish paving work.

Acierno and Holdings then hired R.A. Boyer ("Boyer"), a paving contractor, to complete the paving and to cure what Boyer considered to be a drainage problem. Holdings paid Boyer $161,353.58 for its work including covering two existing catch basins and installing five catch basins at locations different from what was originally contem-plated, regrading part of the lot, and digging up and repairing areas which demonstrated a water removal pumping problem. More than $91,000 of Boyer's bill was attributed to the delivery and installation of hot mix. Although Holdings characterizes the entire sum paid to Boyer as being remedial, the Superior Court held that the $91,000 charged by Boyer for hot mix work could not have been remedial because it was for the top finish layer of the paving process that had never been commenced by Trinity. Further, the Superior Court specifically found that Worthy and Trinity had performed according to the plans provided to them and, therefore, they were entitled to be paid in full. The Superior Court also found that any problem with drainage was due to a change in the plans, for which Holdings was responsible.

Worthy filed a mechanics' lien suit against Holdings and Acierno in October 1990 and a meeting between Worthy, Holdings, Acierno and Boyer was held on November 6, 1990 in an attempt to resolve the dispute. About $300,000 owed for work performed by Worthy was not controverted. Worthy, however, sought payment for the additional sums it claimed were due to it. Holdings contested some of these claims and sought credit for the $161,000 it had paid to Boyer. After discussion, the settlement sum of $327,703.55 was agreed upon and Acierno, on behalf of himself and Holdings, wrote a check on the Holdings' account payable to Worthy for that sum. This sum did not include any payment by Holdings to Worthy for the $91,000 that Trinity had billed Worthy.

On the front of the check Acierno wrote, "All bills paid to date for Concord Gallery Project by this check." On the back of the check above the space for the endorsement was written, "Paid and accepted in full satisfaction of all claims." Acierno tendered the check to James Worthy, President of Worthy. It is unclear from the record whether Mr. Worthy knew at that time that the restrictive language appeared on the check. They shook hands and Mr. Worthy took the check and left. Several weeks later, after seeking legal advice, Worthy endorsed the check after adding on the back of the check

the words: "Accepted under reservations of rights pursuant to 6 Del.C. sec. 1–207."

Relying on language in its contract with Trinity that provided for draws as Worthy was paid, Worthy withheld payment from Trinity claiming that Trinity was not entitled to be paid until Worthy received payment from Holdings for that portion of the work that it claimed it had not been paid and for which it sued. After Worthy cashed Holdings' check, Worthy amended its complaint to seek payment from Holdings for only the $91,000 value of the Trinity work. Trinity filed a cross-claim against Worthy for immediate payment of the $91,000 it had billed it, less payments received, plus interest at the rate of 18 percent per annum.

### III.

After trial, the Superior Court ruled that the Delaware common law doctrine of accord and satisfaction was abrogated by the enactment of 6 Del.C. § 1–207 (UCC). It therefore held that because Worthy negotiated the check under protest it retained the right to sue for the remainder of its claim. The Superior Court further found that there was no basis for Holdings not to pay Worthy and, accordingly, awarded judgment to Worthy against Holdings for the balance it found was due on the unpaid Trinity bill: $80,662.86, plus 10 percent profit, for a total of $88,729.15 plus interest at the rate of 18 percent per annum. It also entered judgment in favor of Trinity against Worthy for $80,662.86 plus interest at the statutory rate of 12 percent per annum "payable at such time that F.A. Holdings, Inc. satisfies the judgment rendered in ... this Order.". The Superior Court also dismissed a counterclaim asserted by Acierno and Holdings.

### IV.

Holdings and Acierno appealed and assert that the Holdings tender to Worthy of the settlement check, and Worthy's acceptance of it, constituted an offer of an accord and satisfaction, and that Worthy could not unilaterally change the terms of that accord and satisfaction by writing new terms on the check. Holdings, therefore, argues that the Superior Court erred when it held Holdings

to be liable to Worthy. Worthy responds that the Delaware common law doctrine of accord and satisfaction has been changed by 6 Del.C. § 1–207 (UCC) and its cashing of the check with a reservation of rights, therefore, did not constitute an accord and satisfaction.

Trinity, in its cross-appeal, asserts that the judgment entered in its favor against Worthy should not be limited by the requirement that it be paid only upon Worthy being paid by Holdings and that the interest awarded to it should have been 15 percent, not 12 percent per annum.

### V.

■ Under the common law doctrine of accord and satisfaction, when a check is tendered in full payment of an obligation for which there is a bona fide dispute based on mutual good faith, the payee who accepts that check also accepts the condition accompanying it, i.e., that the disputed obligation is paid in full by the check. Words of protest added by the payee to the check cannot change the legal effect of the full-payment tender. *See* 6A Corbin, Contracts, §§ 1277–78 (2d ed. 1962). Delaware has consistently followed that rule. *Cummings v. Pinder,* Del.Supr., 574 A.2d 843 (1990); *Ashland Coal & Coke Co. v. Old Ben Coal Corp.,* Del.Super., 187 A. 596 (1934).

The primary question presented in this appeal, therefore, is whether the enactment of 6 Del.C. § 1–207 (UCC) changed the Delaware common law doctrine of accord and satisfaction. It is a question of first impression before this Court.

■ On an appeal from the construction and application of a statute by the trial court, we exercise *de novo* review for legal error. *Alfieri v. Martelli,* Del.Supr., 647 A.2d 52, 53 (1994); *Baldwin v. Benge,* Del.Supr., 606 A.2d 64, 67 (1992). Where there is a dispute over the meaning or effect of a statute, a court seeks to ascertain the legislative intent. *Alfieri v. Martelli,* 647 A.2d at 56; *State v. Cephas,* Del.Supr., 637 A.2d 20, 23 (1994).

## VI.

6 Del.C. § 1–103 (UCC) states:

**§ 1–103. Supplementary general principles of law applicable.**

*Unless displaced by the particular provisions of this subtitle,* the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions. (emphasis added).

The Delaware common law doctrine of accord and satisfaction therefore could not have been displaced by the enactment in Delaware of the Uniform Commercial Code unless the doctrine was displaced by a particular provision in the Uniform Commercial Code. *Stultz Elec. Works v. Marine Hydraulic Eng'g Co.,* Me.Supr., 484 A.2d 1008 (1984).

6 Del.C. § 1–207 (UCC) states:

**§ 1–207. Performance or acceptance under reservation of rights.**

A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice", "under protest" or the like are sufficient.

## VII.

■ Although courts have divided on this issue, we hold, as have the courts of a majority of jurisdictions, that the Delaware common law doctrine of accord and satisfaction was not displaced by the adoption of 6 Del.C. § 1–207 (UCC). *McKee Const. Co. v. Stan-*

*ley Plumbing &. Heating Co.,* Mo.App., 828 S.W.2d 700, 702 (1992) (collecting cases from jurisdictions which adhere to the majority view[1]). *See also John Grier Const. Co. v. Jones Welding & Repair, Inc.,* 238 Va. 270, 383 S.E.2d 719 (1989); But *cf. Robinson v. Garcia,* Tex.App., 804 S.W.2d 238 (1991). White and Summers, *Uniform Commercial Code* § 13–24 (West 3d ed.).

In adopting the majority rule that the doctrine of accord and satisfaction has not been displaced by the enactment of § 1–207 (UCC), courts have relied on various rationales. Some courts have held that the use of the word "performance" and the absence of the word "payment" in § 1–207 (UCC) indicates that the intent of the text is to facilitate the continuation of performance of the original contract, while the offer of an accord and satisfaction involves the formation of a new contract. *McKee Const. Co.,* 828 S.W.2d 700. *See also John Grier Constr. Co.,* 383 S.E.2d at 722; *Stultz Elec. Works,* 484 A.2d at 1011; *Hawkland UCC Series* § 1–207:02 (art. 1) at 198–99. Thus, a debtor's tender of a full-payment check is an offer for a new contract and the creditor's endorsement with reservation of rights is a counter-offer, to which the debtor never had an opportunity to respond. The courts adhering to this rationale have held, therefore, that it would be unfair to hold the debtor to the unaccepted terms of the counter-offer, that is the creditor's reservation of its rights. *Stultz Elec. Works,* 484 A.2d at 1011. It has also been held that the use of § 1–207 (UCC) to extinguish the common law doctrine of accord and satisfaction would "impair the long-recognized settlement tool of the full payment check." *Id.* at 1011–12. The abrogation of the doctrine of accord and satisfaction has also been held to be

---

1. *Air Van Lines, Inc. v. Buster,* Alaska Supr., 673 P.2d 774 (1983); *Pillow v. Thermogas Co. of Walnut Ridge,* 6 Ark.App. 402, 644 S.W.2d 292 (1982); *Connecticut Printers, Inc. v. Gus Kroesen, Inc.,* 134 Cal.App.3d 54, 184 Cal.Rptr. 436 (1982); *R.A. Reither Construction, Inc. v. Wheatland Rural Electric Association,* Colo.App., 680 P.2d 1342 (1984); *County Fire Door Corp. v. C.F. Wooding Co.,* 202 Conn. 277, 520 A.2d 1028 (1987); *Eder v. Yvette B. Gervey Interiors, Inc.,* Fla.App., 407 So.2d 312 (1981); *Stultz Elec. Works v. Marine Hydraulic Engineering Co.,* Me. Supr., 484 A.2d 1008 (1984); *Cass Construction*

*Co., Inc. v. Brennan,* 222 Neb. 69, 382 N.W.2d 313 (1986); *Chancellor, Inc. v. Hamilton Appliance Co., Inc.,* 175 N.J.Super. 345, 418 A.2d 1326 (1980); *Sharpe v. Nationwide Mut. Fire Ins. Co.,* 62 N.C.App. 564, 302 S.E.2d 893 (1983); *Les Schwab Tire Centers of Oregon, Inc. v. Ivory Ranch, Inc.,* 63 Or.App. 364, 664 P.2d 419 (1983); *Marton Remodeling v. Jensen,* Utah Supr., 706 P.2d 607 (1985); *State Department of Fisheries v. J–Z Sales Corp.,* 25 Wash.App. 671, 610 P.2d 390 (1980); *Flambeau Products Corp. v. Honeywell Information Systems, Inc.,* 116 Wis.2d 95, 341 N.W.2d 655 (1984).

contrary to the policy and intent of the UCC as expressed in § 1–102(2) (UCC) "to permit the expansion of commercial practices through custom, usage and agreement of the parties." *Id.* at 1012. Courts have also held that legislative intent to change the common law must be clearly expressed, not implied, and the text of § 1–207 (UCC) does not clearly express that the common law doctrine of accord and satisfaction is displaced. *Chancellor, Inc. v. Hamilton Appliance Co.,* 175 N.J.Super. 345, 418 A.2d 1326 (1980); *McKee Const. Co.,* 828 S.W.2d at 705 (citing *State Dep't of Fisheries v. J–Z Sales Corp.,* 25 Wash.App. 671, 610 P.2d 390 (1980)). A number of courts have also held that in order for § 1–207 (UCC) to apply, the underlying transaction must be covered by Article 2 of the UCC (Sales). *Horn Waterproofing Corp. v. Bushwick Iron & Steel Co., Inc.,* 105 A.D.2d 684, 481 N.Y.S.2d 125 (1984). *See McKee Const. v. Stanley Plumbing,* Mo.App., 828 S.W.2d 700 (1992); *Van Sistine v. Tollard,* App., 95 Wis.2d 678, 291 N.W.2d 636, 639 (1980).

Furthermore, at least 31 states, other than Delaware, have amended UCC § 1–207 as part of the 1990 revision of Article III of the Uniform Commercial Code to state explicitly that section 1–207 does not displace the doctrine of accord and satisfaction.[2] *See eg. Community Bank v. United States National Bank of Oregon,* 276 Or. 471, 555 P.2d 435 (1976) (addition to official text of the UCC which is intended to clarify rather than change the meaning of the UCC is useful in interpreting a state's version of the UCC, even though the clarifying interpretation has not been adopted by the state.)

## VIII.

The issue is somewhat complicated because of the Delaware Study Comment to 6 Del.C. § 1–207 (UCC). Worthy argues that the Delaware Study Comment shows that the Delaware General Assembly intended to displace the common law doctrine of accord and satisfaction when it enacted 6 Del.C. § 1–207 (UCC).

Although this issue has not been addressed before by this Court, other courts have found that the Delaware Study Comment to 6 Del.C. § 1–207 (UCC) showed an intention by the Delaware General Assembly in enacting that section to displace the Delaware common law doctrine of accord and satisfaction. *See e.g. Robinson v. Garcia,* Tex.App., 804 S.W.2d 238, 245 (1991). White and Summers, *Uniform Commercial Code* § 13–24, n. 4 (West 3d ed.). The Superior Court adopted that view in this case. We disagree.

■ An official comment written by the drafters of a statute and available to a legislature before the statute is enacted has considerable weight as an aid to statutory construction. *Siegman v. Columbia Pictures Entertainment, Inc.,* Del.Ch., 576 A.2d 625, 634 (1989); *Re v. State,* Del.Supr., 540 A.2d 423, 426 (1988). *See also Carper v. New Castle County Bd. of Educ.,* Del.Supr., 432 A.2d 1202, 1205 (1981) (use of synopsis); J. Davies, *Legislative Law and Process,* § 55–2 at 313 (West 2d ed. 1986). *Uniform State and Rule Construction Act* § 20(a)(2) (1993).

■ A careful review, however, of the UCC enactment process in Delaware and the Delaware Study Comment to 6 Del.C. § 1–207 (UCC) shows that there is no indication that the General Assembly in enacting Section 1–207 (UCC) intended to displace the existing Delaware common law doctrine of accord and satisfaction.

The Delaware Study Committee did not draft a new 6 Del.C. § 1–207 (UCC). That section was enacted by the Delaware General Assembly just as it was promulgated by the Uniform Laws Commissioners. The 1962 Official Comment to § 1–207 (UCC) by the Uniform Laws Commissioners would, therefore, likely be more persuasive than is the Delaware Study Comment, if there were an inconsistency. As will be seen, however, there is no inconsistency.

The Uniform Commercial Code was adopted in Delaware on June 2, 1966, effective June 30, 1967. 55 Del.Laws, Ch. 349 § 10–101.[3] The UCC was drafted for enact-

---

**2.** The Delaware General Assembly has not yet considered the 1990 revision of Article III, UCC.

**3.** The UCC was adopted as Title 5A Delaware Code. When the Delaware Code was revised in

ment in Delaware by the Committee to Study and Report on the Uniform Commercial Code for Delaware. (Study Committee). The Delaware Study Comments to the UCC were prepared by the same Study Committee and were supplemental to the Official Comments to the UCC prepared by the National Conference of Commissioners on Uniform State Laws (Uniform Law Commissioners), the drafters of the UCC.[4]

The Delaware Comment to 6 Del.C. § 1-207 states:

> This section permits a party who explicitly reserves his rights in a UCC transaction to accept any portion of the performance due him or to render partial or complete performance without jeopardizing any of his remaining rights in the transaction. It thereby facilitates continuation of commercial relations even when some aspect of a transaction is disputed and pending resolution. In particular it makes possible avoidance of the sometimes harsh effect of cases holding that a debt is discharged in its entirety by acceptance of part payment which the debtor tenders as full payment of an unliquidated claim. *See Ashland Coal & Coke Co. v. Old Ben Coal Corp.,* 187 A. 596 (1934).
>
> This provision is analogous to Section 49 of the Uniform Sales Act (6 Del.C. § 749) which states that unless otherwise agreed, buyer's acceptance of goods shall not bar

any suit by him for damages or other legal remedy so long as the buyer gives notice of the claimed breach within a reasonable time.[5]

In every instance where the drafters of the Delaware Uniform Commercial Code either selected one of the Uniform alternatives provided in the Uniform Commercial Code as promulgated by the Uniform Law Commissioners, or in the three instances where non-uniform language was drafted for enactment in Delaware[6], the Delaware Study Comments clearly indicate either which Uniform alternative was selected or, in the case of a change in language, the reason for the change. The Delaware Study Comment to 6 Del.C. § 1-207 (UCC) does not indicate that any change from § 1-207 (UCC) was made or intended.

Nothing in the Delaware Study Comment to 6 Del.C. § 1-207 (UCC) indicates that the section was intended to have a meaning different from Section 1-207 of the UCC as drafted by the Uniform Law Commissioners. Nor is there any indication of any intent that the enactment of 6 Del.C. § 1-207 (UCC) would change the common law doctrine of accord and satisfaction. Rather, the Delaware Comment is consistent with the Official Comment by the Uniform Laws Commissioners to § 1-207 (UCC) as it existed in 1966, and with holdings of a majority of courts,

---

1975 the Uniform Commercial Code was codified as Title 6, Subtitle I Delaware Code Annotated.

**4.** The Delaware Study Comments and some supplementary materials were included with Title 5A Delaware Code as published by West Publishing Co. in April 1971. The Comments were included with Title 6 of the 1975 edition of Delaware Code Annotated published by Michie.

**5.** The official Comments to UCC § 1-207 (1962) provided:

> *Purposes:* 1. This section provides machinery for the continuation of performance along the lines contemplated by the contract despite a pending dispute, by adopting the mercantile device of going ahead with delivery, acceptance, or payment "without prejudice," "under protest," "under reserve," "with reservation of all our rights," and the like. All of these phrases completely reserve all rights within the meaning of this section. The section therefore contemplates that limited as well as general reservations and acceptance by a party may be made "subject to

satisfaction of our purchaser," "subject to acceptance by our customers," or the like.

> 2. *This section does not add any new requirement of language of reservation where not already required by law, but merely provides a specific measure on which a party can rely as he makes or concurs in any interim adjustment in the course of performance.* It does not affect or impair the provisions of this Act such as those under which the buyer's remedies for defect survive acceptance without being expressly claimed if notice of the defects is given within a reasonable time. Nor does it disturb the policy of those cases which restrict the effect of a waiver of a defect to reasonable limits under the circumstances, even though no such reservation is expressed.

> The section is not addressed to the creation or loss of remedies in the ordinary course of performance but rather to a method of procedure where one party is claiming as of right something which the other feels to be unwarranted.

**6.** 6 Del.C. §§ 2-318, 4-106 and 8-317(1).

that it is not the intent of § 1–207 (UCC) to displace the common law doctrine of accord and satisfaction.

Significantly, the Delaware Study Comment refers to § 49 of the Uniform Sales Act and *Ashland Coal & Coke Co. v. Old Ben Coal Corp.*, Del.Super., 187 A. 596 (1934). Section 49 of the Uniform Sales Act involved the buyer's right to inspect and reject defective goods. *Ashland* also involved sales. In that case, pursuant to a contract, large quantities of coal were sold at different times for different prices that were paid by numerous monthly checks. Towards the end of the relationship, the checks were accompanied by vouchers that showed the calculations on which the checks were based. Each voucher was marked as being in full payment for the specified coal sold. The recipient of the vouchers and checks wrote to the sender notifying it that the checks were accepted on account and not in full settlement for the coal tonnage as shown on the statements attached to the checks. The checks were then cashed without the addition of any words to the endorsement. The Superior Court in *Ashland* held that an accord and satisfaction occurred that barred any further recovery for the coal.

The references in the Delaware Study Comment to the Uniform Sales Act and to *Ashland* therefore indicate that the drafters of 6 Del.C. § 1–207 (UCC) and the comment to it were aware that the section was intended to provide a machinery for the continuation of performance of a contract involving continuing transactions that are subject to the substantive provisions of the UCC, such as a contract for sales of goods, and there was no intention that it displace the common law doctrine of accord and satisfaction. *See Horn Waterproofing Corp. v. Bushwick Iron & Steel Co., Inc.*, 105 A.D.2d 684, 481 N.Y.S.2d 125 (1984).

The Delaware Study Comment, therefore, is consistent with the official comment to UCC 1–207 (1962) as drafted by the Uniform Laws Commissioners and it is consistent with the holdings by a majority of courts that the enactment of § 1–207 (UCC) does not constitute a displacement of the doctrine of accord and satisfaction.

 In any case, a study comment is merely an aid to statutory construction. Its function is to aid in the construction of an unclear text. Repeals by implication are not favored in Delaware. *Mayor and Council of Wilmington v. du Pont*, Del.Supr., 57 A.2d 70, 79 (1947). It is clear that the text of 6 Del.C. § 1–207 (UCC) does not displace the common law doctrine of accord and satisfaction. The comment, therefore, cannot supersede the text. *See e.g. In re Adoption of Swanson*, Del.Supr., 623 A.2d 1095, 1096–97 (1993).

We, therefore, hold that the adoption of 6 Del.C. § 1–207 (UCC) by the Delaware General Assembly did not displace the Delaware common law doctrine of accord and satisfaction and it remains a part of our law.

### IX.

Because the adoption of 6 Del.C. § 1–207 (UCC) did not displace the Delaware doctrine of accord and satisfaction, if the tender to Worthy of the check by Holdings was a valid offer of an accord and satisfaction, Worthy's attempted reservation of rights by adding words to the check has no effect.

 The question thus becomes whether Holdings fulfilled the prerequisites required to trigger a common law accord and satisfaction. The acceptance of a check bearing the words "final payment" or the like does not necessarily constitute an accord and satisfaction as a matter of law. The burden to prove all the elements necessary for an accord and satisfaction is on the party alleging that it took place. *Tremont Construction Co., Inc. v. Dunlap*, S.C.App., 425 S.E.2d 792 (1992); *Perkins v. Highland Enterprises, Inc.*, 120 Idaho 511, 817 P.2d 177 (1991). To sustain an accord and satisfaction the party asserting it must show that there was uncertainty regarding the amount of the debt and that the uncertainty was the result of a bona fide dispute based on mutual good faith. "[A] defense based upon a pretext to avoid the discharge of an obligation or one which is merely set up for the purpose of avoiding a just claim is not sufficient to suggest an attempted satisfaction of the claim by partial judgment." *Modern Dust Bag Co., Inc. v.*

*Commercial Trust Co.*, Del.Ch., 104 A.2d 378, 380 (1954). Because there was no factual finding by the Superior Court as to an existence of the necessary predicates, this matter must be remanded to that Court for a determination whether the elements necessary for an accord and satisfaction, such as lack of bad faith, existed as to Holdings' claim that it did not owe Worthy any sums for the work performed by Trinity. *Nepa v. Marta*, Del. Supr., 348 A.2d 182, 184–85 (1975); *Slaughter v. Stafford*, Del.Supr., 141 A.2d 141, 146 (1958).

## X.

The Superior Court entered judgment in favor of Trinity against Worthy in the amount of $80,662.86 plus interest at the statutory rate of 12 percent per annum, "... payable at such time that Holdings satisfies the judgment ..." against it in favor of Worthy. The contract between Trinity and Worthy provided:

"Payment Schedule: 30 day draws upon payment from owner with 10% retainage til [sic] release and payment from owner."

The contract, however, also provided:

Final payment ... shall be made by the Prime contractor and/or Owner of the Subcontractor when the subcontractor's work is completed. If ... the agreement between the Prime Contractor and/or Owner and/or Architect provides for certificates of payment, or that the Prime Contractor must receive payment from the Owner prior to paying the Subcontractor, neither the certificate of payment nor prior payment to the Prime Contractor shall be a condition precedent for payment to the Subcontractor and final payment to the Subcontractor shall be made on demand by the Subcontractor.

The Superior Court, in its Opinion and Order, did not indicate the basis for its holding that Trinity is entitled to be paid only after Worthy is paid by Holdings. It is, therefore, impossible for us to review this holding. This issue also must be remanded to the Superior Court for a determination. The Superior Court also did not consider, because it did not have to, whether Worthy's acceptance of the Holdings' check, if it constituted an accord and satisfaction, would affect the right of Trinity to be paid by Worthy.

There has been no showing that the Superior Court's finding that Trinity is entitled to receive $80,662.86, plus 10 percent profit, was not supported by the record or was not the product of an orderly and logical deductive reasoning process. *Levitt v. Bouvier*, Del. Supr., 287 A.2d 671 (1972). The amount of that award is, therefore, affirmed.

■■■ The trial court's award of interest on the amount owed by Worthy to Trinity at the rate of 12 percent per annum is also affirmed. In its memorandum opinion, the Superior Court originally awarded Trinity 18 percent annual interest. An office conference was then held at which a form of order was agreed upon. As a result of that office conference the Superior Court issued its Order in which Trinity was granted only 12 percent annual interest, the statutory amount. 6 Del.C. § 2301(a).

The office conference was attended by the attorneys for the parties in the presence of the court reporter. No transcript, however, of the conference was submitted to this Court as required by Supreme Court Rules 9(e)(ii) and 14(e). The burden is upon Trinity to show that the Superior Court's decision as to the amount of interest was in error. Without the transcript to elucidate the Superior Court's reason for setting the interest at 12 percent per annum there is nothing before this Court to justify a reversal of that holding. *Slater v. State*, Del.Supr., 606 A.2d 1334, 1336–37 (1992); *Tricoche v. State*, Del. Supr., 525 A.2d 151, 154 (1987). We therefore affirm the awarding of the 12 percent per annum interest.

We leave to the Superior Court to determine whether on remand it can make the required findings from the present record or whether the taking of additional evidence is required.

The Judgment of the Superior Court is REVERSED and REMANDED in part for further proceedings and AFFIRMED in part.