Frank E. ACIERNO and F.A. Holdings, Inc., a Delaware corporation, Defendants and Counterclaimants Below–Appellants,

v.

WORTHY BROTHERS PIPELINE CORPORATION, a Delaware corporation, Plaintiff and Third–Party Counterclaimant Plaintiff Below–Appellee.

No. 443, 1995.

Supreme Court of Delaware.

Submitted: Feb. 19, 1997.
Decided: May 14, 1997.

and satisfaction was therefore not present and we **AFFIRM** the Superior Court's judgment in favor of Worthy Brothers Pipeline Corporation ("Worthy"). Because we do not agree, however, with the Superior Court's analysis of the effect of the subjective intent of Worthy to reserve a claim despite its endorsement of the check tendered in full payment of its claims, we also discuss that element of an accord and satisfaction.

## I.

In its July 26, 1996 response to a remand from this Court, the Superior Court concluded that appellants, Frank E. Acierno and F.A. Holdings, Inc. ("Holdings") had not fulfilled all the legal prerequisites required to trigger a common law accord and satisfaction of the debt owed by them to Worthy.[1] Specifically, the Superior Court held that the underlying dispute between the parties was neither bona fide, nor based on mutual good faith. The Superior Court also concluded that Worthy had never agreed to accept the check tendered by Holdings as full payment for the outstanding debt.

## II.

This is the third time that this matter has been before us. The relevant facts are extensively set forth in our first opinion in this case.[2] For purposes of this appeal, therefore, only a few relevant facts require recitation.

The underlying dispute centers around a 1990 contract between Holdings and Worthy relating to the construction of a shopping mall known as Concord Gallery. In exchange for $630,000, Worthy agreed, in part, to demolish a school and pave a parking lot. Worthy subcontracted the paving to Trinity Paving Co. ("Trinity").

During 1990, Holdings became delinquent in its payments under the contract to Worthy. Thereafter, Worthy and Trinity ceased

Charles M. Oberly, III (argued), Oberly & Jennings, Wilmington, for Appellants.

Joseph Grey (argued), and Patricia A. Pyles, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for Appellee.

Before VEASEY, C.J., WALSH, HARTNETT and BERGER, JJ. and JACOBS, Vice Chancellor* (constituting the Court En Banc).

HARTNETT, Justice.

In this appeal we address the legal elements necessary for an accord and satisfaction of a debt. We conclude that the record adequately supports the Superior Court's factual finding that no bona fide dispute based upon mutual good faith existed between the parties. An essential legal element required for a valid common law accord

---

\* Sitting by designation pursuant to Supreme Court Rules 2 and 4(a) and Del. Const. Art. IV, § 12.

1. *Worthy Bros. Pipeline Corp. v. Acierno*, Del.Super., C.A. No. 90L–10–2–ML, 1996 WL 527347 (July 26, 1996).

2. *Acierno v. Worthy Bros. Pipeline Corp.*, Del. Supr., 656 A.2d 1085 (1995) ("*Acierno I*").

working at the construction site and Holdings hired R.A. Boyer Inc. ("Boyer") to correct certain design deficiencies that were not the responsibility of Worthy and to complete the paving. Worthy then sued Holdings for the sum it alleged to be due it under the contract.

Holdings and Worthy later entered into negotiations to determine the unpaid sum owed to Worthy under the contract. At a meeting on November 6, 1990, Mr. Acierno, on behalf of Holdings, wrote a check made payable to Worthy for $327,703.55, which contained on its face the words: "All bills paid to date for Concord Gallery Project by the check." After unsuccessfully suggesting that the parties memorialize their settlement agreement in writing, Mr. Acierno's lawyer wrote on the back of the check, "Paid and accepted in full satisfaction of all claims." Mr. Acierno then gave the check to James Worthy, Vice President of Worthy, who placed the check in his pocket without looking at it. He later cashed the check after adding on the back the words: "Accepted under reservation of Rights pursuant to 6 Del.C. Sec. 1–207." Holdings then sought to have Worthy's suit dismissed on the ground that a common law accord and satisfaction had occurred.

After trial, the Superior Court ruled that the Delaware common law doctrine of accord and satisfaction had been abrogated by the enactment of 6 Del.C. § 1–207 (UCC).[3] It held, therefore, that because Worthy negotiated the check under protest it retained the right to sue for the remainder of its claim. The Superior Court awarded judgment to Worthy against Holdings for $88,729.15, plus interest at the rate of 18 percent per annum.

In *Acierno I,* we reversed, holding that the Delaware common law doctrine of accord and satisfaction was not displaced by the adoption of 6 Del.C. § 1–207 (UCC). We remanded the matter to the Superior Court for factual findings as to the existence of all the necessary legal predicates for an accord and satisfaction.[4]

On October 11, 1995, the Superior Court responded to the remand, holding that no accord and satisfaction had occurred because Worthy had not assented to the tendered check being a full satisfaction of all Worthy's claims under the contract.[5]

On May 7, 1996, we directed the Superior Court to supplement the factual findings made in its October 11, 1995 remand as to the accord and satisfaction issue because the Superior Court had not addressed all the legal prerequisites required to trigger an accord and satisfaction.[6] On July 26, 1996, the Superior Court responded to our May 7, 1996 remand, finding that no accord and satisfaction had occurred between Holdings and Worthy because no bona fide dispute existed as to the amount claimed to be owed that was based on mutual good faith and because Worthy never agreed to accept the tendered check as full payment for the outstanding debt.[7] Holdings disputes those findings in this appeal.

## III.

The elements necessary for a common law accord and satisfaction are: (1) that a bona fide dispute existed as to the amount owed that was based on mutual good faith; (2) that the debtor tendered an amount to the creditor with the intent that payment would be in total satisfaction of the debt; and (3) that the creditor agreed to accept the payment in full satisfaction of the debt.[8] The

**3.** *Worthy Bros. Pipeline Corp. v. Acierno,* Del.Super., C.A. No. 90L–10–2–ML, 1993 WL 485900 (Sept. 22, 1993).

**4.** *Acierno,* 656 A.2d at 1093.

**5.** *Worthy Bros. Pipeline Corp. v. Acierno,* Del.Super., C.A. No. 90L–10–2–ML, 1995 WL 654148 (Oct. 11, 1995).

**6.** *Acierno v. Worthy Bros. Pipeline Corp.,* No. 443, 1995, Hartnett, J. (May 7, 1996) (ORDER).

**7.** *Worthy Bros. Pipeline Corp. v. Acierno,* Del.Super., C.A. No. 90L–10–2–ML, 1996 WL 527347 (July 26, 1996).

**8.** *See Perkins v. Highland Enterprises, Inc.,* 120 Idaho 511, 817 P.2d 177, 181 (1991); *Accord Acierno,* 656 A.2d at 1092 ("To sustain an accord and satisfaction the party asserting it must show that there was uncertainty regarding the amount of the debt and that the uncertainty was the result of a bona fide dispute based on mutual good faith"). *See also Modern Dust Bag Co. v.*

burden to prove all the elements necessary for an accord and satisfaction is on the party alleging that it took place.[9] Holdings challenges the Superior Court's finding that it failed to prove the first and third elements necessary for an accord and satisfaction.

■ As to the first element, to be deemed bona fide, a dispute must be (1) honest and advanced in good faith, and (2) founded on some reasonable, tenable or plausible ground.[10] The Superior Court concluded from the facts adduced at the trial that Holdings acted in bad faith when it attempted to claim a credit of $161,353.58 against Worthy's bill. Thus, the court concluded that the dispute between Worthy and Holdings was not bona fide.

■ The Superior Court's finding that the dispute was not a bona fide dispute based on mutual good faith is factual. We will not substitute our judgment for the findings of fact by a trial court if the facts are sufficiently supported by the record and are the product of an orderly and logical deductive process, unless the findings below are clearly wrong and justice requires that they be overturned.[11]

[5] The record adequately supports, the Superior Court's finding that Holdings' claim that it was entitled to offset sums it paid to Boyer in order to cure deficiencies in Worthy's work was without merit because Holdings failed to give Worthy an opportunity to cure any alleged deficiencies. While Mr. Acierno sent a letter to Worthy dated September 13, 1990 indicating that the contract would be terminated unless work was resumed within seven days, the letter did not set forth any alleged deficiencies in Worthy's

work. Mr. Acierno's earlier oral indication of some dissatisfaction with part of the curbing was not sufficient to support Holdings' claim that it gave Worthy a proper opportunity to cure alleged deficiencies. By attempting to claim a full credit for replacement work without affording Worthy its contractual right to cure, the record supports the conclusion that Holdings acted in bad faith.

Additionally, we agree that the evidence supports the Superior Court's finding that Mr. Acierno falsely claimed that $91,650.21 of the $161,353.58 claim of Holdings was for replacement work done by Boyer to correct deficiencies in Worthy's work. We conclude that the Superior Court's finding that no bona fide dispute based on mutual good faith existed is adequately supported by the record, is the product of an orderly and logical deductive process and is not clearly wrong. It therefore cannot be disturbed by us.

### IV.

Because a party claiming the existence of an accord and satisfaction must prove all of its elements, our holding that the record supports the Superior Court's finding that the dispute was not a bona fide dispute based on mutual good faith is dispositive of this appeal and renders unnecessary an analysis of the third element of accord and satisfaction. Because, however, the Superior Court may have misstated the law as to the third element necessary for an accord and satisfaction, we discuss this issue.

The Superior Court found that Worthy "never intended nor agreed to accept the tendered check as full payment." Holdings claims that the Superior Court erred because

---

*Commercial Trust Co.*, Del.Ch., *104 A.2d 378, 380* (1954).

9. *Acierno*, 656 A.2d at 1092.

10. *Compare Modern Dust Bag*, 104 A.2d at 380. In *Modern Dust Bag*, Vice Chancellor Bramhall stated that the standard is:

Is the dispute an honest, genuine, bona fide dispute advanced in good faith and resting on a substantial basis and founded on some reasonable, tenable or plausible ground? If it is, then the dispute need not be in fact established or need not be based upon a solid foundation.

Plaintiff must show only that there is some justification for its contention and that the dispute does not represent mere arbitrary refusal on the part of plaintiff to pay a just indebtedness.

104 A.2d at 380. While this standard is arguably inconsistent, we conclude that the better rule of law is articulated in the first sentence, requiring that the dispute be both honest, genuine, and advanced in good faith and rest on a substantial basis and be founded on some reasonable, tenable, or plausible ground.

11. *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671, 673 (1972).

it concluded that Worthy could avoid an otherwise valid accord and satisfaction merely because Mr. Worthy withheld his mental assent to the accord.

 An accord and satisfaction is a bilateral contract.[12] An overt manifestation of assent, not a subjective intent, controls the formation of a contract.[13] The unexpressed subjective intention of a party is therefore not relevant.[14] A Court should consider only a creditor's objective manifestation, not his subjective intent, when a check is negotiated that was offered as payment in full.

 If a creditor cashes a check that has been clearly designated as payment in full, the creditor is deemed to have assented to the terms of the accord and is bound by the acceptance if the other two essential elements for an accord and satisfaction exist.[15] There is no requirement of an actual subjective meeting of the minds whether an accord and satisfaction is intended because a creditor's assent is imputed as a matter of law based upon its objective conduct.[16]

If the Superior Court based its conclusion that Holdings never intended to accept the check as full payment on Worthy's subjective intent, it was incorrect. Because, however, the Superior Court correctly found that no bona fide dispute based on mutual good faith existed, the issue of Worthy's intention in cashing the check is not dispositive.

### V.

In conclusion, we find that the Superior Court's analysis of the effect of Worthy negotiating the settlement check was incorrect because Worthy's assent to an accord and satisfaction should have been based upon its objective conduct, not its subjective intent. We, however, conclude that the record supports the Superior Court's finding that no bona fide dispute based upon mutual good faith existed. Because Holdings failed to prove the existence of this essential element for a common law accord and satisfaction, the decision of the Superior Court awarding judgment to Worthy in the amount of $88,-729.15 plus interest is **AFFIRMED.**

BERGER, Justice, dissenting:

The majority affirms the trial court out of deference to its finding that there was no bona fide dispute based upon mutual good faith. I agree that a trial court's factual findings should be respected unless they are clearly wrong. The determination of whether there is a good faith dispute, however, is not simply a question of fact. It is a mixed question of fact and law.[17] The trial court never identified any legal standards by which it was deciding the existence or absence of a good faith dispute. Had it done so, the court's findings of fact would have supported the legal conclusion that there was a good faith dispute sufficient to support an accord and satisfaction.

It is settled law that a party need not have a meritorious claim in order to establish a good faith dispute for purposes of the doctrine of accord and satisfaction. The party need only establish "some justification" for its position; enough to show that the claim is not arbitrary or pretextual:

> Plaintiff must show only that there is some justification for its contention and that the dispute does not represent a mere arbitrary refusal on the part of plaintiff to pay a just indebtedness. It make no difference whether the dispute involves a question of fact or of law. The fact that plaintiff paid to defendant only the amount which is

**12.** 15 *Williston on Contracts,* § 1838, at 513 (3d ed. 1957).

**13.** *See "Industrial America", Inc. v. Fulton Industries, Inc.,* Del.Supr., 285 A.2d 412, 415 (1971).

**14.** *Leeds v. First Allied Connecticut Corp.,* Del. Ch., 521 A.2d 1095, 1097 (1986).

**15.** *Occidental Chemical Corp. v. Environmental Liners, Inc.,* E.D.Pa., 859 F.Supp. 791, 794 (1994); *Mominee v. King,* Ind.App., 629 N.E.2d 1280, 1282–83 (1994).

**16.** *Flagel v. Southwest Clinical Physiatrists, P.C.,* App., 157 Ariz. 196, 755 P.2d 1184, 1190 (1988); *Fuller v. Integrated Metal Technology, Inc.,* 154 Mich.App. 601, 397 N.W.2d 846, 851 (1986).

**17.** *Wilmington Stevedores, Inc. v. Steel Suppliers, Inc.,* Del.Supr., No. 80, 1986, Walsh, J., 1986 WL 16973 (June 11, 1986) (ORDER).

conceded to be due and which it was previously bound to do is of no significance. The payment of an amount admittedly due will support a promise to discharge the whole claim. However, a defense based upon a pretext to avoid the discharge of an obligation or one which is merely set up for the purpose of avoiding a just claim is not sufficient to support an attempted satisfaction of the claim by a partial payment. [Citations omitted.] [18]

In short, a party may be absolutely wrong and still have a good faith dispute that is subject to resolution through an accord and satisfaction.

The trial court's factual findings strongly suggest that there was a good faith dispute:

1. On August 31, 1990, Acierno and a soil expert inspected the job site. "It had rained the night before. Acierno ... was concerned with the visible pooling of water at various locations on the lot. He was also concerned about 'pumping' in certain areas of the lot, indicating that the subsoil was not adequate. He did not want additional hot mix placed because he felt there were problems. . . ." [19]

2. "Acierno hired R.A. Boyer ('Boyer'), a paving contractor, to complete the paving and to cure what Boyer perceived to be a drainage problem at the site." [20]

3. On or about November 6, 1990, there was a meeting between representatives from Holdings, Worthy and Boyer. "The purpose of the meeting was to resolve the dispute between F.A. Holdings and Worthy." [21]

4. "[T]he parties engaged in arm's length negotiations ... at the November 6th meeting. However, concerning the Boyer bill, the parties took away different conclusions. Acierno, Krapf, Boyer and Cullen concluded that the Boyer bill was settled. James Worthy and Riggin believed that the Boyer bill was an outstanding matter ... The Court does not doubt that Acierno honestly believed that Worthy was assenting to a full and final payment. Likewise, the Court accepts that Worthy, at the meeting, honestly believed that further payments from Holdings would be required before the matter was definitely settled ... The Court concluded that the two men simply thought that they were shaking hands on two completely different deals." [22]

These facts establish that there was a genuine dispute between the parties. The only question is whether there was "some justification" for Holdings' contention that its payment to Boyer should be deducted from the amount owed to Worthy. Although the trial court ultimately determined that the drainage problems were the result of faulty plans rather than faulty workmanship, the court acknowledged that Boyer dug up and repaired work done by Worthy to correct a pumping problem.[23] Holdings did not have to give Worthy the opportunity to cure the problems in order to establish its good faith. It only had to have some justification for its claim.

I would remand and ask the trial court to evaluate its factual findings in light of the legal standard governing the existence of a good faith dispute. I realize that yet another remand would delay the final disposition of this case, but I think this record requires additional review. Accordingly, I respectfully dissent.

18. *Modern Dust Bag Co. v. Commercial Trust Co.*, Del.Ch., 104 A.2d 378, 380 (1954).

19. *Worthy Bros. Pipeline Corp. v. Acierno*, Del.Super., C.A. No. 90L–10–2–ML, 1993 WL 485900 (September 22, 1993) (page 6).

20. *Id.* at page 8.

21. *Id.* at page 10.

22. *Worthy Bros. Pipeline v. Acierno*, Del.Supr., C.A. No. 90L–10–2–ML, 1995 WL 654148 (October 11, 1995) (pages 9–11).

23. *Worthy Bros. Pipeline Corp. v. Acierno*, Del.Super., C.A. No. 90L–10–2–ML, 1993 WL 485900 (September 22, 1993) (page 9).