IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR SUSSEX COUNTY


| A.P. Croll & Son, Inc., | : | C.A. No.: S13C–07–022 RFS |
|---|---|---|
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| Clark's General Contractors, Inc., | : | |
| Defendant | : | |

## *MEMORANDUM OPINION*


*Final Decision and Order*


Date Submitted: January 6, 2015


Date Decided: April 30, 2015


Dean A. Campbell, Esquire, Law Office of Dean A. Campbell, LLC, Georgetown Professional Park, North Building, 20175 Office Circle, P.O. Box 568, Georgetown, DE, 19947, Attorney for Plaintiff


Jeffrey J. Clark, Esquire, Schmittinger & Rodriguez, P.A., 414 S. State Street, P.O. Box 497, Dover, DE, 19901, Attorney for Defendant


**STOKES, J.**

Presently before the Court is a breach of contract action brought by subcontractor, A.P. Croll & Son, Inc., ("Croll"), against general contractor, Clark's General Contractors, Inc. ("Clark"). Croll seeks to recover losses sustained resulting from work related to site preparation and a paving subcontract related to the construction project for Royal Farms in Georgetown, Delaware. Croll alleges Clark failed to pay Croll for performance of its obligation in accordance with a written construction contract for the completion of highway reconstruction work. Croll seeks payment of $24,188.54, plus interest and reasonable attorney's fees. Clark maintains Croll did not perform as contractually obligated and is not entitled to recover losses.

Following the bench trial and upon review of the parties' post-trial briefs, the Court finds Croll is entitled to recover losses sustained in the amount of $5,489.57, plus costs and present and past interest.[1] This amount accounts for a deduction for back fill and top soil, affords set-offs for work performed on Gordy Street, the additional stone materials, and the difference between the interest paid and simple interest for payments made by Clark to a subcontractor on behalf of Croll.

---

[1] Interest is to be calculated at the simple legal interest rate. *See e.g., O'Riley v. Rogers,* 2013 WL 4773076, at *1 (Del. Super. Sept. 4, 2013) (applying the legal interest rate); *see also,* David L. Finger & Louis J. Finger, *Delaware Trial Handbook,* § 28.10 (1994).

## FACTS AND PROCEDURAL POSTURE

In April 2012 Croll entered into a contract, prepared by Clark, in which Croll was to perform work related to highway reconstruction in and around Royal Farms located in Georgetown, Delaware.[2] The Royal Farms project required substantial highway reconstruction work at the intersection of US Route 113 ("113") and Route 404 ("404").[3] Along 113, 404, and Gordy Street is where most of the work related to the present dispute took place.[4]

Emory Hill was hired to oversee the project and Clark was hired as a general contractor to construct the new store.[5] Clark subcontracted with Croll to complete roadwork, including site work within the right-of-way as defined by Delaware Department of Transportation ("Del Dot"), for the agreed upon amount of $298,353.31.[6]

As work progressed, incremental payments were made by Clark to Croll.[7] A dispute arose after four applications were paid, totaling $192,880.73, leaving an alleged balance of $105,472.58 owed to Croll.[8] In July 2013, Croll filed a Complaint alleging Clark had breached their contract by failing to pay Croll for

---

[2] Pl's Ex. E.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] Pretrial Stipulation and Order at ¶ 3–4.
[8] *Id.*; Compl. at ¶ 7.

work performed.[9]  Before trial, most of the disputes raised in the Complaint were resolved.

At this juncture, the parties' contentions center on a handful of transactions. First, Emory Hill paid Croll directly for work related to the back fill and top-soil on 404 and 113 and subtracted the amount due, $8,884.50, to Clark.[10]  Second, Clark paid $11,870 to an alternative contractor, Stanley's Asphalt, to pave Gordy Street and $520.08 for additional stone material to complete work allegedly within Croll's responsibility under the contract.[11]  Lastly, Croll disputes the payment Clark paid to Shea Concrete, LTD ("Shea"), a party subcontracted by Croll.[12] Croll contends Shea was not entitled to interest in the first instance, and in the alternative argues to reduce the amount of interest paid from $2,914.96, calculated at a rate of twenty-four percent, to $339.35 in order to reflect interest calculated at the legal interest rate.[13]

Croll maintains Clark has breached the contract by failing to pay for work performed.[14]  Defendant Clark asserts Croll failed to perform the work as

---

[9] *See generally,* Compl. (asserting a total sum due to Croll).

[10]  Pl.'s Post Trial Closing Reply Mem. at 1–2; Def.'s Closing Mem. at 2–3.

[11]  Pl.'s Post Trial Closing Reply Mem. at 4–5; Def.'s Closing Mem. at 3–4.

[12]  Pl.'s Post Trial Closing Reply Mem. at 4–5; Pretrial Stipulation and Order at ¶ 4 (alleging "Clark paid Shea Concrete $26,522.34 on behalf of Croll").

[13] Pl.'s Post Trial Closing Reply Mem. at 4–5.

[14] *See generally,* Compl. (seeking damages for failure to pay for work performed); Pl.'s Post Trial Closing Reply Mem.

contractually obligated resulting in a breach of contract.[15]  As such, Clark asserts funds are not due to Croll, and in the alternative that set-offs are due to Clark.[16]

Following a bench trial held on November 19, 2014 the Court reserved decision pending receipt of post-trial briefs.

## DISCUSSION

Both parties in this matter have abundant experience; both parties are particularly knowledgeable about their chosen profession.  Moreover, some of the parties involved in this dispute have a history; some parties even have a prior course of dealings.  In fact, Croll and Clark were known to each other.

Looking at the issue globally, both sides are not without fault in terms of how things fell apart.  On Clark's side of the ledger, an amount of $24,188.54 was owed.[17]  On the other hand, Croll, after making an initial payment failed to pay—even the principal amount—which escalated into the demand of interest by Shea at a rate of twenty-four percent.[18]

Moreover, with Croll's knowledge as a subcontractor in this large project Croll was aware the bills were paid by Clark in order to obtain a release for the

---

[15] Def.'s Closing Mem. at 5.
[16] *Id.*
[17] Pl.'s Opening Post Trial Closing Mem. at 2.
[18] Pl.'s Post Trial Closing Reply Mem. at 4–5.

Royal Farms project. Although, Croll was not paid in full for the work performed, it is not tenable in the trade to fail to pay subcontractors, such as Shea in this case, based on the failure to receive all funds due under Delaware law.[19] The evidence does not reflect a finding of intent to make Clark's payment to Croll a condition precedent of Croll's payment to Shea.[20] As such, some of the present controversy regarding Shea could have been avoided had Croll paid Shea when their right to payment matured.

Turning to contract formation, the contract itself was finalized in April.[21] It is important to note Croll's proposal was submitted one month before the contract was finalized.[22] The proposal offered more details, including line items, compared to the scant contract developed in April by Clark.[23] The bottom line of Croll's work was $298,353.31; however, the proposal was not signed by Clark and the

---

[19] *See e.g.,Worthy Bros. Pipeline Corp. v. Acierno*, 1996 WL 527347, at *2 (Del. Super. July 26, 1996) *aff'd,* 693 A.2d 1066 (Del. 1997) (resolving a dispute against a subcontractor raised by a paving company finding when a reasonable time expires the paving company's right to payment matures notwithstanding receipt of payment from a general contractor in the absence of an unambiguous expression of the parties' intent to make receipt of payment a condition precedent).
[20] Pl's Trial Ex. E; s*ee e.g., Volair Contractors, Inc. v. Coastal Mechanical, Inc.,*1986 WL 13982, (Del. Dec. 1, 1986) at *1 (requiring an unambiguous expression of intent to establish a condition precedent).
[21] Pretrial Stipulation and Order at ¶ 1.
[22] Pl's Trial Ex. C.
[23] *Id.*

scope of work in the resulting contract was different.[24]  Accordingly, the Court finds the proposal is a mere offer and is not a contract.[25]

After analyzing the record, it is clear the April agreement did not adopt the proposal, nor was the proposal incorporated by reference.[26]  Consistent with Delaware law, the Court finds Croll's proposal was an offer that was not accepted because the terms were not identical.[27]  Instead, Clark presented a counter-offer, the contract at issue, which became a contract when Croll accepted the terms as evidenced by their signed agreement.[28]  Under Delaware law, Croll accepted Clark's counter-offer by manifesting intent to be bound by Croll's terms in consideration for payment for work performed forming a valid contract.[29]

Prior to signing a binding contract, both parties ought to have been aware of the scope of work the contract entailed before electing to be bound by the terms. To a certain extent, the parties were cautious enough to include a modification

---

[24] *Compare* Pl's Trial Ex. C, *with,* Pl's Trial Ex. E.

[25] *See e.g., Blakeley v. Scanlon,* 604 A.2d 416 (Del. 1991) (holding "[u]nder Delaware law, it is an elementary principle that an acceptance of an offer, in order to be effectual, must be identical with the offer and unconditional. One aspect of the principle is stated in Restatement, Contracts, § 60: "A reply to an offer, although purporting to accept it, which adds qualifications or requires performance of conditions, is not an acceptance but is a counter offer." (internal citations removed) (emphasis removed)).

[26] *Compare* Pl's Trial Ex. C, *with,* Pl's Trial Ex. E.

[27] *See generally, Friel v. Jones,* 206 A.2d 232, 233 (Del. Ch. 1964); s*ee also,* 1 Arthur L. Corbin, Corbin on Contracts § 82 (1963).

[28] *Id.; see also*, Pl's Trial Ex. E.

[29] *Friel,* 206 A.2d at 233.

clarifying their responsibilities with respect to the south side of 404; however, the parties failed to delineate the specifics for the remainder of the project.[30]

The modification itself does not define the sole limitation of Croll's expected work performance.[31]  As such, it is difficult at this latent stage to determine the total expected scope of work performance based on the four-corners of the contract alone.[32]  The general idea seems to be Croll would do the outside work because Croll had the Del Dot experience, Clark would do the inside work, and Del Dot presumably would submit approvals along the way.[33]

To the extent the parties' intent can be ascertained and aligned with the simple facts giving meaning to the contract, the contract will dictate the outcome of the controversy.[34] Where the contract is highly susceptible to different interpretations by a reasonable person in the parties' position, the contract shall be interpreted against the drafter, Clark.[35]

---

[30] Pl's Trial Ex. E. (containing the following handwritten script, "on south side of 404 only" under a diagonal dash from the work sidewalks followed by the capital letters "CT").

[31] *Id.*

[32] *Id.*

[33] Def.'s Closing Mem. at 2; Shea Dep. 28:17–19.

[34] *Holland v. Hannan,* 456 A.2d 807, 815 (D.C. 1983) (adopting the principle "[a contract] is not ambiguous where the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends") (*quoting Burbridge v. Howard Univ.,* 305 A.2d 245, 247 (D.C. 1973)).

[35] *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) (explaining the doctrine of *contra proferentum* which requires ambiguous language to be construed against the drafter).

## BACK FILL AND TOP SOIL

Croll refused to do the work accounting for the back fill and top soil on 404 and 113 without a separate payment.[36] As a result, Emory Hill paid Croll directly and thusly reduced the amount paid to Clark.[37] Back fill and top soil work was required between the curb and the sidewalk.[38] This work is not clearly spelled out in the contract, but this work is alluded to in the contract by the term "top soil and seeding" and as necessary components to the related work.[39] According to *contra proferentem* this portion of the contract would be interpreted against Clark,[40] however; Croll's interpretation of the contract is not reasonable when looking at the simple facts.[41]

Under Delaware law, a court need not adopt an interpretation of a contract "contrary to both the plain meaning of the document and logic, and to reach an absurd, unfounded result."[42] After careful analysis of the record, Croll's interpretation is unreasonable. The contract outlining Croll's duty to perform states: "the highway reconstruction work within right away of U.S. 113, Route

---

[36] Def.'s Closing Mem. at 2.
[37] *Id.*
[38] *Id.*; *see also,* Def.'s Ex. 1.
[39] Pl's Trial Ex. E.
[40] *Rhone-Poulenc Basic Chemicals Co.,* 616 A.2d at 1196.
[41] Pl.'s Post Trial Closing Reply Mem. at 2–3.
[42] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010).

18/404 Gordy road necessary…top soil and seeding" [sic].[43]  The top soil and backfill work in dispute were necessary highway reconstruction work for this project located between the curb and the line of construction, thus within the right of way indicated in the contract.[44]  Accordingly, performing back fill and top soil work appear to be within Croll's duty to perform under this contract.[45]

Moreover, finding back fill and top soil work within Croll's responsibility is consistent with the bulk of evidence provided in the record.  The record provides testimony from Emory Hill, testimony from Del Dot representatives, e-mail correspondence between Emory Hill and Croll, and Croll's own testimony that bolster the reasonableness of this interpretation.[46]  As such, a reasonable person in the parties' position would have interpreted the contract as defining the back fill and top soil work within Croll's responsibility, as did "everyone on the project, with purportedly the exception of Croll."[47]  Thus, the Court finds set-off in the amount of $8,884.50 will be charged against Croll as Emory Hill back-charged the same amount to Clark.

---

[43] Pl.'s Trial Ex. E.
[44] Def.'s Ex. 1.
[45] *Id.*
[46] Def.'s Closing Mem. at 2–3 (providing a detailed description of the testimony at trial and quoting the following pertinent portion of the e-mail correspondence between an Emory Hill representative and Croll: "[i]n talking with the DelDOT inspector the area along RT 113 up to the LOC is perceived as the DelDot ROW and based on this *AP Croll would own the top soil between the curb and the LOC line*").
[47] Def.'s Closing Mem. at 3.

**GORDY STREET**

Croll disputes whether there was a duty under the contract to perform the paving work on Gordy Street.[48] Essentially, Croll asserts Gordy Street is not a 'highway,' therefore work on Gordy Street could not be considered necessary highway reconstruction work.[49]

Generally, "[c]ourts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty."[50] Here, at issue is the term highway. The Delaware Court of Chancery held the word highway "is a "generic name for all kinds of public ways including country and township roads, streets, and alleys."[51] The Court finds a reasonable person in the parties' position would interpret the term highway to include Gordy Street. With this reading, Croll was under a contractual obligation to perform paving on Gordy Street.

Additionally, the contract specifically refers to "Gordy Street" and "asphalt paving."[52] These references combined with the parties' respective course of performance indicate Croll was under a duty to perform site work on Gordy

---

[48] Pl.'s Post Trial Closing Repy Mem. at 3.
[49] *Id.*
[50] *Zullo v. Smith*, 427 A.2d 409, 412 (Conn. 1980).
[51] *Scureman v. Judge*, 626 A.2d 5, 11 n.3 (Del. Ch. 1992) aff'd sub nom. *Wilmington Trust Co. v. Judge*, 628 A.2d 85 (Del. 1993).
[52] Pl.'s Trial Ex. E.

Street.[53] The work performed on the north and south side of Gordy Street in accordance with the state inspection also dovetails with the general intent of the parties who collaborated in order to capitalize on Croll's expertise in working with Del Dot.[54]

Croll did the preparatory work[55] for the road but failed to pave it.[56] The proffered reason at trial—Croll did the work gratuitously—is not persuasive and inconsistent with the evidence on the record.[57] Moreover, Croll had the billings for this work yet did not object to the work itself, only the interest rate as to Shea.[58] As such, the contract, logic, course of performance, and trade norms demonstrate a reasonable mind would interpret Croll's responsibilities under the contract as including paving and other necessary work on Gordy Street.

Following this reasonable interpretation and the course of performance of the parties, Croll was under a duty to perform the work on Gordy Street and Clark is due a set-off of $11,870.

---

[53] *Id.; see also,* Def.'s Closing Mem. at 3–4.
[54] Def.'s Closing Mem. at 3; Shea Dep. 28:17–19 (demonstrating "[e]verybody just knew Croll was doing the state work and I [, Shea,] was doing the curb work for them").
[55] Shea Dep. 34:13–19 (attributing the following work to Croll: "demo[ing] the existing concrete, roto-mill[ing] the street to get the blacktop out of the way," getting the "sub-base ready, put[ing] the stone in, which is required by the state under my work").
[56] Def.'s Closing Mem. at 3–4.
[57] *Id.*
[58] *Id.*

## ADDITIONAL MATERIAL REQUIRED TO FILL RIGHT-OF-WAY

With respect to the additional materials, the 22 tons of stones, Clark will also be afforded a set-off in the amount of $520.08.[59] This amount has been unchallenged by Croll and the stones were an anticipated expense related to the project.[60]

## INTEREST PAYMENT TO SHEA

It is undisputed that Clark paid money owed to a subcontractor, Shea, on behalf of Croll.[61] Ultimately, at issue before the Court is the past-due interest paid by Clark to Shea totaling $2,914.96.[62] Croll contends there was not a specified contractual term which entitled Shea to a payment of interest.[63] Thusly, Croll maintains Clark wrongfully paid Shea interest because he was not entitled to any interest per their contractual arrangement.[64] Croll disputes the entire interest payment made to Shea, and in the alternative seeks a set-off utilizing an alternative

---

[59] *Id.* at 4–5.
[60] *Id.*
[61] Pl.'s Post Trial Closing Br. at 4–5; Pretrial Stipulation and Order at ¶ 4 (alleging "Clark paid Shea Concrete $26,522.34 on behalf of Croll").
[62] Pl.'s Post Trial Closing Reply Mem. at 4–5.
[63] *Id.*
[64] *Id.*

interest rate.[65]  The interest payment was calculated at a rate of twenty-four percent.[66]  Croll suggests employing the legal interest rate of 5.75 percent.[67]

Generally, "[i]nterest is money awarded to a successful plaintiff in a civil action beyond the amount of the judgment to compensate the plaintiff for additional losses resulting from being deprived of the use of the money during the period between the injury and payment."[68]  Here, Shea, although not a party to this case, ordinarily would be entitled to interest for being deprived of the use of money while awaiting payment.[69]

After establishing that interest was due to Shea in the ordinary course of business, the question remaining is what interest rate should be applied.[70]  This Court has held interest should be calculated using the same rate when possible.[71]  As interest is due to Croll at the legal interest rate, the interest rate for this dispute shall be calculated at the same rate.[72]  As such, the Court finds Croll is responsible

---

[65] *Id.*

[66] *Id.*

[67] *Id.*; *see also, O'Riley,* 2013 WL 4773076, at *1 (explaining "[t]he rate of interest allowed in actions at law generally is equated to the 'legal rate' of interest described in *6 Del. C.* § 2301 (*quoting* David L. Finger & Louis J. Finger, *Delaware Trial Handbook,* § 28.10 (1994))).

[68] *O'Riley,* 2013 WL 4773076, at *1.

[69] *Id.*

[70] *Id.*

[71] *Id.* (holding interest should be calculated using the same rate rather than two separate rates referring to pre-judgment and post-judgment interest).

[72] *Id.*

for past-due interest calculated at the legal interest rate.[73]  Utilizing the legal interest rate would reduce the interest amount from $2,914.96 to $339.35.[74]  As such, a set-off for will be afforded to Croll in the amount of $2,575.61.

## CONCLUSION

For the foregoing reasons, an award of $5,489.57, accounting for the above-mentioned set-offs, plus costs and present and past interest calculated at the legal interest rate is to be entered for Plaintiff, Croll.

**IT IS SO ORDERED**

*/s/ Richard F. Stokes*

_____

Richard F. Stokes, Judge

cc: Prothonotary

---

[73] *Id.*

[74] Pl.'s Post Trial Closing Reply Memo. at 4–5.